IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

JERRY PAUL CROOKS, JR.,

        Petitioner,

vs.                                             **Case No. 06-3313-RDR**

PHILL KLINE, Attorney
General of the State of
Kansas; and ROBERT WEROLTZ,
Secretary of Corrections,
Kansas Dept. of Corrections,

        Respondents.

## MEMORANDUM AND ORDER

    I.    INTRODUCTION

    This case is before the court upon petitioner's request for relief pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a jury trial of one count of statutory rape in violation of K.S.A. 21-3502(a)(2). He was sentenced to a term of 25 years, which was ordered to run consecutive to a term of imprisonment petitioner is currently serving in Texas.

    II.    FACTUAL BACKGROUND

    At petitioner's trial, he stipulated that he had sexual intercourse with S.S., who was under 14 years old at the time. He further stipulated that a child was born of that intercourse on November 17, 1999 and that he is the father. He further stipulated that the intercourse occurred on or about February 15, 1999 in Butler County, Kansas. Petitioner asserted as his defense at his

trial that he had a common-law marriage with S.S. at the time of the alleged crime.

During the trial, the court gave the following instructions to the jury regarding the elements of the offense, the common law marriage defense, and other matters:

> "[D]efendant is charged with the crime of Rape.  The defendant pleads not guilty.  To establish this charge, each of the following claims must be proved:  1) That the defendant had sexual intercourse with [S.S.]; 2) That [S.S.] was under 14 years of age when the act of sexual intercourse occurred; and 3) That this act occurred on or about the 15th day of February, 1999, in Butler County, Kansas."
>
> "It is a defense to the charge of rape of a child under 14 years of age that at the time of the offense the child was married to the accused."
>
> "The defendant raises marriage as a defense.  Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty.  The State's burden of proof does not shift to the defendant."
>
> "Under Kansas law, a female 12 years of age or older and a male 14 years of age or older are deemed to have the capacity to consent to marriage."
>
> "In order to establish the existence of a common-law marriage in Kansas, the following must be proved:  1) The parties must each have the capacity to make an agreement to marry; 2) There must be a present agreement between the parties to be married; and 3) The parties must each hold themselves out to the public as husband and wife."

III.  HABEAS STANDARDS

A writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States," or, "was based on an unreasonable determination of the facts in light of the evidence presented at trial."  28 U.S.C. § 2254(d)(1)&(2).  State court factual findings are presumed correct, absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).

The Supreme Court has stated that a state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in our cases" or if the state court "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.

The law limits the authority of the court to hold an evidentiary hearing upon petitioner's application for relief:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that - - (A) the claim relies on - - (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant

guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

IV.   EVIDENCE AT TRIAL

The trial in this case started on November 13, 2001. That was a day before S.S.'s sixteenth birthday. She testified that she had known petitioner for about seven years. He had lived with her and her mother, her twin brother and older sister in Texas prior to their moving to Kansas. S.S. and petitioner shared a bed in Texas and her mother was aware of that fact. After moving to Augusta, Kansas, petitioner "lived" or "stayed with" S.S.'s family three to five nights a week. He kept clothes (in a bag), toiletries and tools there. Again, he and S.S. slept together, although they both told S.S.'s mother that they were not having sex. When petitioner was not staying in Augusta, he was staying in Wichita with his grandmother. His driver's license had a Wichita address.

Petitioner's cousin, Trea Dubendorf, lived with S.S.'s family in Augusta for four to six months in 1999. He testified that petitioner and S.S. acted closer than most husbands and wives and that S.S. referred to herself as "[S.] Crooks" "quite often" or from "time to time." (Tr. Vol. I at p. 28). He stated that they engaged in public displays of affection frequently at home and in public. Petitioner took S.S. to a family reunion. Dubendorf stated that petitioner got his mail at his grandma's home in Wichita and that most of his clothes were there. He said

4

petitioner introduced S.S. in public as his wife or his significant other.

S.S. testified that she and petitioner were boyfriend/girlfriend. When they were staying together, they intended to get married in the future. But, according to S.S., they were not married then. She did not recall calling herself "[S.] Crooks," but she did remember at least one letter to petitioner in 1999 which she signed as "Your loving wife, [S.] Crooks". In the same letter she told petitioner that they needed to get married. S.S. stated that she did not use "Crooks" on any legal document or on anything other than a letter to petitioner. She had two rings, one she wore on her wedding finger. Petitioner had a gold band he wore on his wedding finger. She took several trips with petitioner to Branson where they spent the night together.

S.S. and petitioner told S.S.'s mother that S.S. was pregnant in March or April of 1999. The three of them agreed to tell the police that S.S. had been date-raped at a party in Wichita because they knew that petitioner could get in trouble. S.S. testified that petitioner did not introduce her to others as his wife. She moved to Wichita with petitioner after she became pregnant and lived with petitioner's grandparents. She did not sleep with petitioner there and they were not treated as married. She did not give her baby petitioner's last name, although she spoke with petitioner about the baby's first name.

At the time of the trial, S.S. did not use petitioner's last name. She said she was single and had never been divorced.

S.S.'s mother testified that S.S. and petitioner intended to get married in 1999, but that they were not married and that petitioner did not refer to S.S. as his wife. She listed S.S. as a dependent on her 1999 tax return. She also identified letters petitioner sent to her in which petitioner admitted that his "premarital sex" with S.S. was wrong and further admitted that he should have married S.S. in Kansas when he had the chance. Petitioner also mailed letters addressed to "[S.] Crooks," which S.S.'s mother did not relate to S.S. He also referred to S.S.'s mother as "Mom" or his "mother-in-law" in some letters.

S.S. and her twin brother were taken from their mother's custody by state authorities after the baby was born and remained out of her custody at the time of the trial.

S.S.'s twin brother testified that S.S. did not refer to herself being married to petitioner and that she did not call herself "[S.] Crooks." He did not consider petitioner his brother-in-law.

A social worker, Deborah Maier, testified that she was told that S.S. loved petitioner and one day they would get married. She was not told that they were married.

A financial affidavit and a prison release form signed by petitioner were admitted into evidence. On both documents,

petitioner indicated he was single.

    V.    ARGUMENTS FOR RELIEF

        a)   <u>Instructions on the defense of common-law marriage</u>

Petitioner argues that the trial court erred in instructing the jury on the defense of common-law marriage. Petitioner first asserts that the instructions improperly shifted the burden of proof to the defendant/petitioner to prove that a marriage existed. Petitioner further asserts that this error was compounded by the failure of the instructions to state the standard of proof which had to be satisfied.

Petitioner fails to demonstrate by either point that the trial court's alleged errors justify relief pursuant to § 2254. In other words, petitioner has not shown that the state court's decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, were "based on an unreasonable determination of the facts in light of the evidence presented at trial." § 2254(d)(1)&(2).

The law of the Supreme Court prohibits any instruction upon an affirmative defense which would lessen the burden of the State to prove the elements of an offense beyond a reasonable doubt. See <u>Patterson v. New York</u>, 432 U.S. 197, 210-11 (1977). The Supreme Court has <u>not</u> held that it is contrary to law to instruct a jury that a defendant has a burden of proving an affirmative defense,

7

like the defense of marriage, which does not lessen the burden of the State to prove an essential element of the crime beyond a reasonable doubt. See Gilmore v. Taylor, 508 U.S. 333, 341 (1993).

Nor did the instructions render the outcome in this case fundamentally unfair or unreasonable. During the trial of this case, the evidence showed that petitioner cohabated with S.S. and her family over a period of years. S.S., her mother and her twin brother testified contrary to the petitioner's affirmative defense. Letters and documents signed by petitioner were admitted that also were contrary to the defense. Petitioner's cousin, who lived with S.S.'s family briefly, testified for petitioner, but even his testimony was equivocal. The instructions in this matter did not lead to an unreasonable or fundamentally unfair result in light of the evidence.

In petitioner's reply brief, petitioner asserts that the holding of Cooper v. Oklahoma, 517 U.S. 348 (1996) is contrary to the instructions given at this trial. We disagree. In Cooper, instructions were given which required a defendant to prove by "clear and convincing evidence" that he was incompetent to stand trial. Such instructions were determined constitutionally improper because they conceivably would permit someone to stand trial who more probably than not was incompetent. This violated due process. The instant case is distinguishable because the affirmative defense did not involve competence to stand trial or the elements of the

8

offense. Petitioner also argues in his reply brief that the instructions were contrary to state law. However, jury instructions which are improper under state law do not provide a basis for federal habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). Finally, petitioner asserts in his reply brief that the instructions were confusing because the jury could have interpreted the requirement that there be a "present agreement to be married" to mean an agreement at the time of the trial as opposed to the time of the alleged offense. This argument was not made on direct appeal or in petitioner's state habeas proceedings. Therefore, the argument cannot be considered here. 28 U.S.C. § 2254(b); Gray v. Netherland, 518 U.S. 152, 161-62 (1996).

      b)   Admission of the stipulation

A stipulation was read to the jury at petitioner's trial which stated that the parties stipulated to facts which constituted the essential elements of the offense. Petitioner argues that it was an error to admit this stipulation without first inquiring as to whether petitioner entered the stipulation knowingly and voluntarily. Petitioner asserts that the stipulation amounted to a plea of guilty.

The court rejects this claim for the following reasons. First, the court notes that the record reflects that the stipulation was "prepared and approved by both counsel and the defendant and by the Court." Transcript, Vol. 1 at p. 23.

9

Therefore, defendant did approve of the stipulation. Second, the court believes the stipulation cannot be equated with a plea of guilty. Obviously, the defense of common-law marriage was argued and considerable evidence was presented on both sides of the issue. Had the jury been persuaded of the defense, petitioner would have been acquitted. Therefore, the stipulation cannot be considered tantamount to a guilty plea. Third, petitioner does not contend that the prosecution could not prove the essential elements of the offense. The victim testified as to the elements of the offense during the trial. Petitioner did not contest the accuracy of the stipulation at trial; nor does he do so now. Therefore, there appears to be no harm from the alleged error asserted by petitioner. See U.S. v. Aptt, 354 F.3d 1269, 1284 (10th Cir. 2004) (considering defendant's failure to object to a stipulation entered into by counsel in deciding whether it was a valid waiver); Hawkins v. Hannigan, 185 F.3d 1146, 1155 (10th Cir. 1999) (considering the lack of an objection to a stipulation by a defendant in determining whether defense counsel improperly waived defendant's constitutional confrontation rights); Johnson v. Cowley, 40 F.3d 341, 346 (10th Cir. 1994) (remanding case for harmless error inquiry regarding stipulation to conviction used in sentencing enhancement proceeding); Smith v. Armontrout, 692 F.Supp. 1079, 1087 (W.D.Mo. 1988) (applying harmless error analysis to stipulation to letter confessing to murder).

c)   <u>Admission of the financial affidavit</u>

Petitioner's next argument is that the trial court erred in admitting a financial affidavit for the appointment of counsel into evidence.  The document was admitted on the motion of the prosecution because petitioner stated he was "single" on the affidavit.  Petitioner contends that this violated his Fifth Amendment rights because he was compelled to give a statement regarding his marital status, to the detriment of his affirmative defense, in order to protect his Sixth Amendment right to counsel. Even if this amounted to constitutional error, the error was harmless.[1]

Petitioner also signed a jail admission and release record and wrote letters which indicated that he was single.  S.S. testified that her relationship with petitioner was as boyfriend/girlfriend. Her mother and brother corroborated this testimony.  Petitioner's only witness was equivocal on the issue.  There was evidence that S.S. signed a letter as petitioner's "loving wife," that petitioner and S.S. had rings, that they took overnight trips to Branson together, that they slept together with the full knowledge of

---

[1] The court may consider the issue of harmless error even if the State does not raise it as a defense. <u>Lufkins v. Leapley</u>, 965 F.2d 1477, 1481 (8th Cir.) <u>cert. denied</u>, 506 U.S. 895 (1992); <u>Prevatte v. French</u>, 459 F.Supp.2d 1305, 1375 n. 36 (N.D.Ga. 2006); <u>Saldano v. Cockrell</u>, 267 F.Supp.2d 635, 644 (E.D.Tex. 2003).  We further note that petitioner has raised the issue of cumulative error, which the Tenth Circuit has said is an "extension of harmless error" analysis. <u>Darks v. Mullin</u>, 327 F.3d 1001, 1018 (10th Cir. 2003).

S.S.'s mother (although she testified she was not aware they were having sex), and that their relationship existed for years. Nevertheless, the court has carefully considered the record in this case and concludes beyond a reasonable doubt that the entry of the financial affidavit did not impact the jury's decision upon the question of guilt. "A constitutional error is harmless when 'it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003) quoting Neder v. United States, 527 U.S. 1, 15 (1999). This doctrine has been applied to a similar claim involving the use of financial information to obtain court-appointed counsel. See U.S. v. Askarov, 299 F.3d 896, 897-98 (6th Cir. 2002).

      d)   Cumulative error

Petitioner asserts that the cumulative effect of the previously-asserted errors is not harmless and requires a remand for a new trial. We reject this contention. The court has carefully considered the trial proceedings in this matter. We find no underlying unfairness. Petitioner received a fair trial.

      e)   Ineffective assistance of counsel

Petitioner argues that his trial attorney was constitutionally ineffective because he failed to object to the instruction which stated that the elements of a common-law marriage "must be proved" and thereby assented to incorrectly placing the burden of proving

12

the affirmative defense upon the petitioner.

Ineffective assistance of counsel claims are governed by the standards in Strickland v. Washington, 466 U.S. 668 (1984). "A petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced the petitioner's defense." Wiggins v. Smith, 539 U.S. 510, 521 (2003). "Deficient performance" is proven by demonstrating that counsel's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "Prejudice" is proven by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The Kansas Court of Appeals in its review held that the instructions as a whole "fairly and accurately stated the law and the jury would not have been misled by them." Crooks v. State of Kansas, No. 93,759 at p. 10 (Kan.Ct.App. 1/13/2006). This court has already held that there was no federal constitutional error in the instructions. This being the case, the court does not believe petitioner's attorney "fell below an objective standard of reasonableness" in failing to object to the instructions. Nor would an objection to the instructions have led to a different result in the trial. Therefore, we reject the ineffective assistance of counsel argument.

      f)    Constitutionality of the statutory rape statute

Finally, petitioner contends that the statutory rape statute in Kansas is unconstitutional in light of the Supreme Court's decision in Lawrence v. Texas, 539 U.S. 558 (2003). Petitioner contends that Kansas law violates the Equal Protection Clause because consensual sex between an adult and a minor (below the age of 14) who is married to the adult is legal, but consensual sex between an adult and a minor (below the age of 14) who is not married to the adult is illegal. Petitioner further argues that the Due Process Clause is violated because the statute imposes a blanket proscription on consensual sex by all unmarried persons under the age of sixteen without regard to maturity.

The Kansas statute defines the crime of "rape" as including "sexual intercourse with a child who is under 14 years of age." K.S.A. 21-3502(a)(2). It further provides that it is a defense to a prosecution for rape "that the child was married to the accused at the time of the offense." K.S.A. 21-3502(b). At the time of petitioner's trial, common-law marriage was a defense to statutory rape charges. Now, Kansas statutory law does not recognize a common-law marriage contract if either party is under 18 years of age. K.S.A. 23-101(b).

In Lawrence, the Court held that the right to liberty under the Due Process Clause of the Fourteenth Amendment rendered invalid a Texas law prohibiting certain consensual sexual activity between persons of the same sex. The Court found that a state may not

14

criminalize such activity when it is private, non-remunerative, and engaged in between mutually consenting adults.  539 U.S. at 578.

The decision was not grounded upon the Equal Protection Clause.  The Supreme Court also expressly stated that the <u>Lawrence</u> decision did not involve minors.  <u>Id.</u>  Nor did it establish a fundamental right of adults to engage in all forms of private consensual sexual conduct.  <u>Muth v. Frank</u>, 412 F.3d 808, 818 (7th Cir. 2005).  In <u>Muth</u>, the Seventh Circuit denied habeas relief to a petitioner serving a sentence for incest on the grounds that, in spite of <u>Lawrence</u>, there was no clearly established federal law in 2001 that supported a fundamental right to engage in incest.  <u>Id.</u>  We believe the same reasoning applies here.  In 2001, when petitioner was convicted, there was no clearly established federal law that supported a fundamental right for an adult to engage in consensual sexual intercourse with a 13-year-old child to whom the adult was not married.  Nor was there clearly established law in 2001 which stated that it was irrational or a violation of the Equal Protection Clause on the basis of any other standard for the Legislature to prohibit an adult from having sexual intercourse with a 13-year-old child to whom the adult was not married.

To prevail upon this argument, petitioner must establish that the denial of his claim was "contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d).

15

He has failed to carry this burden.

VI.  CONCLUSION

In conclusion, for the above-stated reasons, the court shall deny the petition for relief under 28 U.S.C. § 2254.

**IT IS SO ORDERED.**

Dated this 27th day of March, 2007 at Topeka, Kansas.

				s/Richard D. Rogers
				United States District Judge